Michael D. Zoldan – 028128
**SHIELDS PETITTI & ZOLDAN, PLC**
5090 N. 40th Street, Suite 207
Phoenix, Arizona 85018
Telephone: (602) 718-3330
Facsimile: (602) 675-2356
E-Mail: mdz@shieldspetitti.com
E-Mail: docket@shieldspetitti.com

*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Shelley McReynolds, | **No. 25-cv-03326-GMS** |
| Plaintiff, | |
| v. | |
| Nexa Mortgage, LLC, an Arizona limited liability company; | **PLAINTIFF'S MOTION TO LIFT ARBITRATION STAY** |
| Defendant. | |

Plaintiff Shelley McReynolds ("McReynolds" or "Plaintiff"), by and through undersigned counsel, files this motion to lift the arbitration stay. This Motion is supported by the following Memorandum of Points and Authorities.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    FACTUAL BACKGROUND

This action arises from Nexa's compensation system under which Plaintiff received no guaranteed salary and routinely worked more than forty hours per week without overtime premiums. Plaintiff alleges that this payment structure violated the Fair Labor Standards Act in her one-count complaint against Nexa. (Dkt. 1).

After the complaint was filed, Defendant demanded arbitration pursuant to an arbitration agreement between the parties, and the parties stipulated to a stay of the case. (Dkt. 8). This Court entered a stay to permit the arbitration to proceed. (Dkt. 9). Consistent with the arbitration agreement's designation of JAMS as the provider, JAMS opened a file and notified the parties that the employer was required to pay the filing fee before the case could commence. (Exhibit A). JAMS later issued a formal Final Request for Filing Fee to Defendant, advising that payment had not been received and warning that the matter would be closed within thirty days absent payment by Defendant. (Exhibit B).

Despite being on notice that the arbitration matter would be dismissed as result, Defendant did not pay the required fee. JAMS therefore closed the arbitration and issued a notice confirming that the case was dismissed due to Defendant's nonpayment. (Exhibit C). The dismissal was not a matter of scheduling or administrative housekeeping; it was the direct result of Defendant's decision not to fund the arbitral forum that Defendant itself had invoked, apparently as an effort to delay this litigation.

In addition to refusing to fund McReynolds' arbitration, Nexa (through the same attorneys representing it in this case) has recently elected to litigate several other employment disputes in state and federal court against its former employees, all of whom have the same or similar employment agreements mandating arbitration as Plaintiff. For example, Nexa filed a lawsuit against its former employee, Kristine Wake, which is currently pending before Your Honor as *Nexa Mortgage v. Kristine Wake, et al.* (Case No. 25-cv-01506-GMS). In that matter, Nexa incorporated in its complaint its employment agreement with Ms. Wake, which, in

relevant part, contains an arbitration provision that states: "In the event of any dispute between the parties concerning or arising out of their employment relationship, it *shall* be resolved through binding arbitration in accordance with the rules of JAMS Arbitration…". (Exhibit D, Section VIII). The arbitration provision Nexa ignored in filing its action against Ms. Wake is substantively identical to the arbitration clause in Nexa's employment agreement with Ms. McReynolds. (Dkt. 8, Exhibit A, Section VIII).

In another recent example, on November 5, 2025, Nexa initiated an action in the Maricopa County Superior Court, *Nexa v. Nichols et al.,* CV2025-060631, against approximately ten of its former employees, alleging various causes of action. (Exhibit E). Nexa attached to its complaint each employee's employment agreement, all of which contain the same arbitration provision as Ms. McReynolds's and Ms. Wake's. *Id.* Based on this course of conduct, Nexa has therefore treated arbitration as optional, using it as a shield in some cases (namely, those with collective action risk) while proceeding in court when convenient.

As a result of Defendant's nonpayment and its course of conduct, there is no pending arbitration and no forum in which Plaintiff's claims can be heard outside this Court. Plaintiff seeks an order lifting the stay so Plaintiff can have a forum to prosecute her claim.

## II.    LEGAL ARGUMENT

### A.    THE COURT SHOULD LIFT THE ARBITRATION STAY BECAUSE DEFENDANT IS IN STATUTORY DEFAULT UNDER FAA §3.

Section 3 of the Federal Arbitration Act ("FAA") requires courts to stay a case that is covered by an arbitration agreement so that it may proceed in arbitration, as this Court has done

in the instant case. This requirement, however, is only required so long as "the applicant for the stay is not in default in proceeding with such arbitration." 9 U.S.C. § 3. Accordingly, the Ninth Circuit has held that, in the event of such a default after the court has stayed litigation and sent the case to arbitration, the court need not compel the parties to return to arbitration. *Sink v. Aden Enters., Inc.*, 352 F.3d 1197, 1200 (9th Cir. 2003). Instead, "[i]f a party defaults after an initial stay and reference to arbitration, that permits a district court to vacate the § 3 stay." *Id.* at 1201.

The question of arbitration default is one that the district court can decide. *See Pre-Paid Legal Servs., Inc. v. Cahill*, 786 F.3d 1287, 1296 (10th Cir. 2015) (finding that district courts have "the power to decide whether a default has occurred under § 3" and citing *Sink* in support). In this case, Defendant's failure to pay the required arbitration fees requires a finding of arbitration default. *See Sink*, 352 F.3d at 1198-99 (holding that an employer's failure to pay arbitration fees qualified as a default in arbitration and affirming the district court's order lifting the arbitration stay); *see also Hernandez v. Acosta Tractors, Inc.*, 898 F.3d 1301, 1305 (11th Cir. 2018) (noting that the defendant's failure to pay arbitration fees constituted default in the arbitration and district court "would have been within its power to find that [Defendant] could no longer require [Plaintiff] to proceed in arbitration); *Pre-paid Legal Servs., Inc.*, 786 F.3d at 1294 (holding failure to pay arbitration fees constitutes arbitration default).

Here, Defendant was notified that payment of the filing fee was required to begin arbitration. Defendant declined to pay, even after follow-up requests by the arbitration provider and warnings that the matter would be dismissed as a result. Under the FAA, that sequence constitutes a statutory default and ends the Court's obligation to keep this case stayed. This

Court should find that Defendant is in default as to arbitration and should lift the arbitration stay currently in place.

### B. THIS COURT SHOULD LIFT THE ARBITRATION STAY BECAUSE NEXA'S CONDUCT INDEPENDENTLY CONSTITUTES WAIVER OF ITS RIGHT TO ARBITRATION.

If this Court declines to lift the arbitration stay due to Defendant's statutory arbitration default, the Court should find that Defendant has waived its right to compel arbitration. The test for waiver of the right to compel arbitration consists of two elements: (1) knowledge of an existing right to compel arbitration; and (2) intentional acts inconsistent with that existing right. *Hill v. Xerox Bus. Servs., Ltd. Liab. Co.*, 59 F.4th 457, 468 (9th Cir. 2023). The Supreme Court has held that, in deciding whether a waiver has occurred, "the court focuses on the actions of the person who held the right; the court seldom considers the effects of those actions on the opposing party." *Morgan v. Sundance, Inc.,* 142 S. Ct. 1708, 1713 (2022); *see also Royal Air Props., Inc. v. Smith*, 333 F.2d 568, 571 (9th Cir. 1964) ("[N]o detriment to a third party is required for waiver, it is unilaterally accomplished.").

Here, it is indisputable that Nexa is aware of the arbitration agreements. Nexa drafted these agreements at the start of employment and has enforced the agreement in this case, as evidenced by its stipulation to arbitrate this matter. (Dkt. 8).

Defendant has, however, engaged in conduct inconsistent with its proclaimed right to arbitration. First, by demanding that this case be resolved via arbitration but then refusing to pay the arbitration fees as required by the arbitration provider (a provider that was selected by Defendant unilaterally when it drafted the arbitration agreement), Defendant has engaged in an

intentional act that is wholly inconsistent with its apparent intent to proceed with arbitration. *See Brown v. Dillard's, Inc.*, 430 F.3d 1004, 1012 (9th Cir. 2004) ("Courts have generally found that nonpayment of filing fees demonstrates an act inconsistent with the right to arbitrate."); *see also Freeman v. SmartPay Leasing, LLC*, 771 F. App'x 926, 932 (11th Cir. 2019).

Second, Defendant's inconsistent and selective enforcement of its arbitration agreements, along with its current strategy of ignoring the arbitration agreement when litigation in the courts is beneficial to Defendant, further illustrates that Defendant has engaged in actions inconsistent with the right to arbitrate. *See Van Ness Townhouses v. Mar Indus. Corp.*, 862 F.2d 754, 756, 759 (9th Cir. 1988) (finding waiver when party answered complaints, moved to dismiss the action, and did not claim a right to arbitration in any of the pleadings). Although Defendant has admittedly not engaged in extensive litigation actions in this case, its intentional and selective utilization of the litigation process only when it is advantageous to Defendant (such as allowing Defendant to sue multiple former employees in one action) is the epitome of acting inconsistently with one's apparent right to, and preference for, arbitration. *See Hill v. Xerox Bus. Servs., Ltd. Liab. Co.*, 59 F.4th 457, 472 (9th Cir. 2023) ("*Van Ness* instead explains that the inferences drawn from the party's choice to rely on judicial proceedings, such as by filing 'pleadings [and] motions and approving a pre-trial conference order,' amount to a waiver, because one cannot claim to be interested in preserving his right to an arbitration forum if he instead relies on the *judicial* process.").

When filing its complaints against other former employees in state and federal court, Nexa attached the employment agreements containing mandatory arbitration clauses.

However, because pursuing relief in the courts rather than through arbitration was to Defendant's benefit in those cases, Defendant chose to disregard them in their entirety. Defendant's reliance on the judicial process in those cases is intentionally inconsistent with any right to now claim arbitration is a proper forum for Ms. McReynolds.

Further, such selective and strategic enforcement of identical arbitration provisions is, in essence, an alternative form of forum-shopping, a practice long considered inequitable in every jurisdiction. The arbitration agreement at issue in all of the cases, including this one, provides that all disputes will be resolved through arbitration, *regardless of who initiates the dispute*. Defendant's violations of its own arbitration provisions in an effort to control where certain issues are resolved cannot be viewed as "consistent" with its self-imposed obligation to arbitrate employment disputes. *See Wellborn Clinic v. Medquist, Inc.*, 301 F.3d 634, 637-38 (7th Cir. 2002) (cautioning against the potential practice of selective enforcement of arbitration clauses as a means of forum shopping and noting that a party's breach of part of an arbitration clause could constitute action inconsistent with a right to arbitrate and that "[l]itigating a claim is clearly inconsistent with any perceived right to arbitration"); *see also Franklin v. Cmty. Reg'l Med. Ctr.*, 998 F.3d 867 (9th Cir. 2021) (noting that parties are not allowed to play "fast and loose" with their commitment to arbitration by "honoring it when advantageous and circumventing it to gain undue advantage"); *Bolo Corp. v. Homes & Son Constr. Co.*, 105 Ariz. 343, 464 P.2d 788, 793 (1970) (holding that when the "plaintiff sought redress through the courts, in lieu of the arbitration tribunal, and asked the court for exactly the same type of relief (i.e., damages), which an arbitrator is empowered to grant, it waived the right to thereafter

arbitrate the controversy over the protest of the defendant").

Defendant's conduct, both in this case and in the others cited in this motion, is inconsistent with Defendant's perceived right to arbitration. By failing to pay the mandatory arbitration fees and by selectively enforcing its arbitration provisions in order to control which issues are resolved in which forum, Defendant has waived its right to arbitration in this case. Accordingly, this Court should lift the arbitration stay and allow Plaintiff to proceed with litigation.

## III.    CONCLUSION

Defendant, by its own affirmative conduct, is no longer entitled to arbitration in this matter. Accordingly, Plaintiff seeks only to lift the arbitration stay and to proceed with her case in federal court.

DATED this  11th  day of March, 2026.

SHIELDS PETITTI & ZOLDAN, PLC

By /s/ *Michael Zoldan*
Michael Zoldan
5090 N. 40th Street, Suite 207
Phoenix, AZ 85018
*Attorneys for Plaintiff*

COPY of the foregoing sent electronically this 11th day of March, 2026, to:

Devin Sreecharana, Esq. (SBN 029057)
Andrew S. Lishko (SBN 033136)
MAY, POTENZA, BARAN & GILLESPIE, P.C.
1850 N. Central Ave., Suite 1600
Phoenix, Arizona 85004-4633
Telephone: (602) 252-1900
Facsimile: (602) 252-1114
Email: devin@maypotenza.com
        alishko@maypotenza.com


By: Cory Shields