Michael D. Zoldan – 028128
**SHIELDS PETITTI & ZOLDAN, PLC**
5090 N. 40th Street, Suite 207
Phoenix, Arizona 85018
Telephone: (602) 718-3330
Facsimile: (602) 675-2356
E-Mail: mdz@shieldspetitti.com
E-Mail: docket@shieldspetitti.com

*Attorneys for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Shelly McReynolds,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>Nexa Mortgage, LLC, an Arizona limited liability company;<br><br>　　　　　Defendant. | No. 25-cv-03326-GMS<br><br><br>**PLAINTIFF'S REPLY TO DEFENDANT'S RESPONSE TO MOTION TO LIFT ARBITRATION STAY** |

Plaintiff Shelly McReynolds ("McReynolds" or "Plaintiff"), by and through undersigned counsel, files this Reply to Defendant Nexa Mortgage, LLC's ("Nexa" or "Defendant") Response to Plaintiff's Motion to Lift the Arbitration Stay (Dkt. 12) (the "Response"). This Reply is supported by the following Memorandum of Points and Authorities.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Nexa's Response attempts to reframe a straightforward failure to proceed with arbitration as a dispute over fee allocation. But the record reflects a much simpler reality: Nexa invoked arbitration, obtained a stay of this action, and then failed to take the steps required to initiate the arbitration it demanded. When JAMS required payment to move forward and provided a mechanism to challenge any dispute regarding its rules, Nexa did neither. Instead,

1

it did nothing and allowed the arbitration to be dismissed.

Nexa's conduct has two independent legal consequences, both of which support lifting the stay. First, Nexa is in default in proceeding with arbitration under the Federal Arbitration Act ("FAA"). A party defaults when it fails to take the steps necessary to allow arbitration to proceed, including paying required fees. Nexa's nonpayment, despite notice and warning of dismissal, prevented the arbitration from ever commencing.

Second, even if the Court were to conclude that Nexa's conduct does not constitute default, the same conduct establishes waiver. Nexa knew of its right to arbitrate, invoked that right to obtain a stay, and then acted inconsistently with it by refusing to proceed with the arbitration process and failing to raise any objections within that forum.

Nexa's Response does not change that analysis. Its arguments regarding JAMS's fee allocation, the applicability of its rules, and Nexa's post-dismissal efforts to reopen the case all share a common flaw: they were never raised in arbitration and are irrelevant to the question presented here.

The question before the Court is therefore limited. This is not a dispute about whether JAMS (the arbitration forum unilaterally chosen by Nexa) correctly applied its rules or whether the parties ultimately should have shared arbitration costs equally. The issue is whether Nexa: (i) defaulted in proceeding with arbitration; and/or (ii) waived its right to arbitrate. Under either analysis, the answer is "yes" and the result is the same: the stay should be lifted so Plaintiff may proceed in this Court.

## II. UNDISPUTED FACTS

On December 8, 2025, shortly after Plaintiff filed her arbitration demand with JAMS, both parties received a communication directly from JAMS outlining the process of initiating the arbitration. In that communication, JAMS informed the parties that it would be applying its Minimum Standards and also communicated a clear procedural path regarding any disputes as to the application of those Minimum Standards. In relevant part, the letter stated:

> The Minimum Standards will apply notwithstanding any contrary

> provisions in the parties' pre-dispute arbitration agreement. . . . Any further issue about whether the Minimum Standards apply should be directed to the arbitrator once appointed. After hearing from the parties, if the arbitrator believes JAMS should revisit the issue, the arbitrator may advise JAMS accordingly. JAMS will then review the issue, taking the arbitrator's position into consideration, and will make a final determination."

(**Exhibit A**). Despite this clear instruction, Nexa failed to utilize JAMS's processes for resolving the very issues it now brings before this Court. Nexa never paid its filing fees, requested the appointment of an arbitrator to challenge the filing fees, raised any objection to JAMS regarding the filing fees, or otherwise engaged with JAMS on the issue of the filing fees. Rather, Nexa chose to ignore the follow-up requests from JAMS for payment, as well as the final warning from JAMS specifically stating that the matter would be dismissed if payment were not made. JAMS appropriately, and in accordance with its own rules, dismissed the matter based on Nexa's nonpayment of the filing fee.

## III.   REPLY ARGUMENT

### A.   *Nexa Defaulted by Not Proceeding with Arbitration Under the FAA.*

*1. Nexa defaulted in arbitration by failing to participate in the process required to initiate it.*

The issue here is not whether JAMS correctly applied its Minimum Standards or whether the parties' agreement required equal cost-sharing. It is about whether Nexa proceeded with arbitration at all as required by the FAA. It did not.

The FAA requires a stay only so long as the party seeking arbitration is not "in default in proceeding with such arbitration." 9 U.S.C. § 3. Courts consistently hold that a party defaults when it fails to take the steps necessary to allow arbitration to go forward, most notably by failing to pay required arbitration fees. *See Sink v. Aden Enters., Inc.,* 352 F.3d 1197, 1199–1200 (9th Cir. 2003). That is exactly what happened here. JAMS informed Nexa that payment was required to initiate the arbitration. Nexa did not pay. JAMS then dismissed the arbitration due to nonpayment. The analysis ends there. Nexa did not "proceed with" arbitration—it

3

unilaterally halted the process before it began.

Furthermore, in its attempts to distinguish this case from *Sink* and others, Nexa's Response implies that a court cannot find that a party has defaulted in arbitration unless the arbitrator has first found that there was default. (Dkt.12, pg. 9). This is simply not the case, and the Court here is authorized to lift the arbitration stay based on a finding of default (or waiver) regardless of whether the arbitrator made a substantive ruling on the matter. *See Dekker v. Vivint Solar, Inc.*, 2021 U.S. App. LEXIS 32092, at *4 (9th Cir. Oct. 26, 2021) (resting its decision on the fact that the parties had explicitly agreed to delegate decisions regarding breach and default to the arbitrator); *see also Lee v. Citigroup Corp. Holdings, Inc.*, 691 F. Supp. 3d 1157, 1160 (N.D. Cal. 2023) (noting that "[c]ourts have consistently held that termination by the [arbitration forum] allows for cases to return to district court.").

Nexa attempts to recast its conduct as a principled refusal to pay fees it did not owe. But the FAA does not permit a party to halt arbitration based on a unilateral disagreement with the arbitration provider's administration of the case, especially where that unilateral disagreement was never even communicated to the arbitration forum. A party must participate in good faith in the arbitral process, not simply abandon it.

        *2. Nexa forfeited any objection to JAMS's fee allocation by failing to raise it in arbitration.*

Even if Nexa did have a legitimate objection to JAMS's application of its Minimum Standards to this matter, that objection was forfeited. In its initial communication to the parties on December 8, 2025, JAMS expressly instructed the parties on how to raise a dispute regarding the applicability of the Minimum Standards: "Any further issue about whether the Minimum Standards apply should be directed to the arbitrator once appointed…". **Exhibit A.**

In other words, JAMS established a clear procedural mechanism for resolution of the issues Nexa now raises in its Response: pay the initial fees, proceed to arbitrator appointment, and raise any dispute there.

Nexa, however, chose to ignore that instruction entirely. It did not pay the filing fee, did

4

not request appointment of an arbitrator, did not submit any objection to JAMS, and did not otherwise raise its arguments within the arbitration forum. Instead, Nexa remained silent and allowed the arbitration to be dismissed, even after receiving written warning from JAMS that nonpayment would lead to dismissal.

That failure constitutes forfeiture. A party cannot bypass the arbitral process and then assert, for the first time in court, arguments that were required to be raised within that process. *See, e.g., Noble Capital Fund Mgmt., LLC v. US Capital Global Inv. Mgmt., LLC*, 31 F.4th 333, 336 (5th Cir. 2022) ("[P]arties may not avoid resolution of live claims through compelling a new arbitration proceeding after having let the first arbitration proceeding fail").

Nexa's current arguments about fee allocation, the applicability of the Minimum Standards, and JAMS's alleged errors are therefore irrelevant. Those issues were never presented to JAMS or an arbitrator. Instead, they are raised for the first time here.

> *3. Nexa's authorities are inapposite because they involve parties who participated in arbitration.*

Nexa relies on numerous cases involving disputes over arbitration fees. But every case it cites shares a critical feature that is absent here: the party participated in the arbitration process and raised its objections within that forum.

For example, in *Brown v. Peregrine Enterprises, Inc.,* the employer did not simply refuse to pay. It submitted a "series of letters" to the arbitration provider explaining its position and expressing a willingness to arbitrate under a different fee allocation. *Brown*, 2023 U.S. App. LEXIS 33730, at *8 (2d Cir. Dec. 20, 2023). The Second Circuit held that, under those circumstances, the employer had not defaulted. *Id.* That case, however, bears no resemblance to this one. Nexa did not submit letters or propose any alternative regarding the fee allocation, nor did it utilize the specific dispute process articulated by JAMS from the very beginning. It simply did nothing.

Like *Brown*, the other cases Nexa cites involve parties who actively contested fee allocation within arbitration. None involved a party who refused to pay, failed to raise any

objection in arbitration, allowed the case to be dismissed, and then attempted to revive arbitration in court. *Lee v. Citigroup Corp. Holdings, Inc.*, however, presents this exact fact pattern. 691 F. Supp. 3d 1157, 1161 (N.D. Cal. 2023).[1] In *Lee,* the court held that the employer had waived its right to arbitration when the arbitration was dismissed by the arbitral forum for the nonpayment of arbitration fees. *Id.* The same result is warranted here.

*4. The basis for JAMS's dismissal is irrelevant, as nonpayment alone authorized termination of the arbitration.*

Nexa devotes substantial attention to JAMS's reference to California law in its dismissal notice. That issue is a distraction. Regardless of any statutory reference, JAMS's own rules independently authorize dismissal where a party fails to pay required fees. Under JAMS Rule 6(c), the arbitration provider may suspend or terminate proceedings if fees are not paid in full. **See Exhibit B**.

Here, the dispositive fact is simple: Nexa did not pay the required fee, and the arbitration was dismissed as a result. The inclusion of a reference to California law does not change that outcome. More importantly, any challenge to JAMS's reasoning or application of its rules was required to be raised within the arbitration itself. Nexa did not do so. It cannot now attempt to litigate that issue in this Court.

*5. Nexa's post-dismissal conduct does not cure its default.*

Nexa suggests that the stay should not be lifted because it attempted to reopen the arbitration after learning that the case had been dismissed. That argument is unavailing.

By the time Nexa sought to reopen the case, the arbitration had already been terminated due to its failure to pay. Nexa had already defaulted. A party cannot undo its default by belatedly attempting to revive the process it chose to abandon.

---

[1] On page 6 of Plaintiff's Motion, Plaintiff attributed the following quote to *Brown v. Peregrine Enterprises, Inc.*: "Courts have generally found that nonpayment of filing fees demonstrates an act inconsistent with right to arbitrate." Nexa correctly points out in its Response that this quote does not appear in *Brown*, or in any other cases cited in the Motion. That quote should have been attributed to *Lee v. Citigroup Corp. Holdings, Inc.*, 691 F. Supp. 3d 1157, 1161 (N.D. Cal. 2023). Plaintiff's counsel acknowledges, and apologizes to the Court for, the mistake.

Nor did Plaintiff have any obligation to consent to reopening arbitration after Nexa's default. The FAA does not require a party to give its opponent a second opportunity to arbitrate after that opponent has failed to proceed in the first instance.

*6. Nexa cannot manufacture a defense by causing the dismissal of the arbitration.*

Nexa's position rests on the fact that the arbitration did not proceed to the appointment of an arbitrator or a decision on the merits. But that result was the direct consequence of Nexa's own conduct. JAMS required payment of the filing fee to initiate the arbitration process. Nexa did not pay. As a result, no arbitrator was appointed and the matter was dismissed.

Nexa cannot rely on the absence of an arbitrator or a completed arbitration proceeding when its own failure to comply with JAMS's procedures prevented the arbitration from moving forward in the first place. A party may not avoid arbitration by refusing to participate in the process required to initiate it and then argue that arbitration was never properly conducted.

The FAA requires parties to proceed in good faith with arbitration, not to obstruct it. Because Nexa's nonpayment prevented the arbitration from advancing to the point where any dispute could be resolved, it cannot now rely on that failure to avoid a finding of default or waiver.

**B.      *Nexa Independently Waived its Right to Arbitration.***

*1.   Plaintiff is not required to show prejudice in order to establish waiver.*

In its Response, Nexa incorrectly states that in order to establish waiver, a plaintiff must demonstrate "prejudice to the party opposing arbitration resulting from such inconsistent acts." (Dkt. 12). The United States Supreme Court, however, held in *Morgan v. Sundance Inc.*, 142 S. Ct. 1708, 1713 (2022) that prejudice to the party opposing arbitration is *not* a requirement for a finding that a party has waived its right to arbitration. Rather, the only two elements required are that: (1) the party had knowledge of an existing right to compel arbitration; and (2) the party engaged in intentional acts inconsistent with that existing right. *Hill v. Xerox Bus. Servs., Ltd. Liab. Co.*, 59 F.4th 457, 468 (9th Cir. 2023). Plaintiff can meet this burden to show

that Nexa has waived its right to arbitration in this case.

### 2. *Nexa acted inconsistently with its arbitration right by preventing arbitration from occurring.*

Nexa demanded arbitration, obtained a stay, and then refused to take the steps necessary to initiate the arbitration it invoked. That is quintessentially inconsistent conduct. Courts routinely recognize that failure to pay arbitration fees is conduct inconsistent with the right to arbitrate because it prevents arbitration from proceeding. *See, e.g., Lee*, 691 F. Supp. 3d at 1161.

Nexa attempts to distinguish these cases by characterizing its nonpayment as a contractual dispute. But that framing does not change the effect of its conduct: the arbitration did not occur because Nexa chose not to proceed.

### 3. *Nexa's conduct in other litigation further confirms its inconsistent use of arbitration.*

Nexa's attempt to isolate its conduct in this case ignores the broader context in which it has treated its arbitration provisions as optional. As Plaintiff noted in her Motion, Nexa has invoked arbitration to obtain a stay here, while proceeding in court in other cases involving materially identical agreements. That inconsistency is relevant because it reflects a pattern of conduct incompatible with a genuine intent to arbitrate. At a minimum, it reinforces the conclusion that Nexa's failure to proceed with arbitration in this case was not inadvertent. Even apart from this broader pattern, Nexa's refusal to pay the required fees and failure to raise any objection within the arbitral forum independently establish default and waiver.

## IV.  CONCLUSION

The arbitration failed for one reason: Nexa chose not to pay the fees required to initiate it and chose not to raise any objection within the arbitral forum. Nexa did not follow JAMS's procedures. It did not preserve its arguments. And it did not proceed with arbitration as required by the FAA.

A party cannot abandon arbitration, remain silent in the arbitral forum, and then return

to court to demand another opportunity. Because Nexa defaulted in proceeding with arbitration, or in the alternative, waived its right to arbitration, the stay should be lifted.

DATED this 1st day of April, 2026.

SHIELDS PETITTI & ZOLDAN, PLC

By /s/ Michael Zoldan
Michael Zoldan
5090 N. 40th Street, Suite 207
Phoenix, AZ 85018
*Attorneys for Plaintiff*

FILED and SERVED on those listed below
on April 1, 2026, through the Court's CM/ECF
system:

Devin Sreecharana
Andrew S. Lishko
MAY POTENZA BARAN & GILLESPIE, P.C.
1850 N. Central Avenue, Suite 1600
Phoenix, AZ 85004
devin@maypotenza.com
alishko@maypotenza.com

Nathan J. Kunz
BRODY GAPP LLP
2102 Business Center Drive, Suite 2047
Irvine, CA 92612
nkunz@brodygapp.com

*By: Lisa Rustenburg*

# EXHIBIT A



December 8, 2025

NOTICE TO ALL PARTIES

     RE:     **McReynolds, Shelley vs Nexa Mortgage LLC**
               Reference #:**5240004005**

Dear Parties:

JAMS has received a Demand for Arbitration in the above-referenced matter.

Upon review of the Demand and accompanying documents JAMS has determined that JAMS Policy on Employment Arbitration Minimum Standards of Procedural Fairness applies.

Please carefully review the enclosed Minimum Standards as JAMS requires that the parties comply with them in order to proceed.

The Minimum Standards will apply notwithstanding any contrary provisions in the parties' pre-dispute arbitration agreement. The parties' agreement to proceed constitutes agreement to the foregoing**.**

Any further issue about whether the Minimum Standards apply should be directed to the arbitrator once appointed. After hearing from the parties, if the arbitrator believes JAMS should revisit the issue, the arbitrator may advise JAMS accordingly. JAMS will then review the issue, taking the arbitrator's position into consideration, and will make a final determination.

Sincerely,

Amy Thornton
Arbitration Practice Administrator
AThornton@jamsadr.com

# JAMS Policy on Employment Arbitration Minimum Standards of Procedural Fairness

Effective July 15, 2009



# JAMS Policy on Employment Arbitration Minimum Standards of Procedural Fairness Effective July 15, 2009

**Founded in 1979, JAMS is the largest private provider of alternative dispute resolution (ADR) services worldwide.** With a roster of nearly 500 neutrals and 29 locations, JAMS successfully resolves and manages tens of thousands of business and legal disputes. JAMS offers customized in-person, virtual and hybrid resolution services locally and globally through a combination of industry-specific experience, first-class client service, the latest technology and highly trained and experienced mediators and arbitrators.

**This document presents the principles and policies of JAMS on the use of arbitration for resolving employment-related disputes**. These policies include the Minimum Standards of Procedural Fairness, which apply to arbitrations based on pre-dispute agreements that are required as a condition of employment. JAMS will administer mandatory arbitrations in employment cases only if the arbitration provision complies with JAMS Minimum Standards.

**JAMS continues to urge employers and employees to use, at the earliest point possible, mediation and other ADR processes** that encourage consensual resolution of disputes in a fair, affordable and efficient manner. We also recommend that employers consult with counsel when considering, drafting or implementing pre-dispute arbitration clauses that relate to statutory employment claims.

*Visit jamsadr.com/rules-employment or scan for additional employment arbitration resources, including custom employment rules, a commercial contract clause, and more.*



 ## A. Preference for Mediation and Voluntary Arbitration

JAMS encourages the use of mediation and of voluntary arbitration that is not a condition of initial or continued employment. JAMS does not take a position on the enforceability of condition-of-employment arbitration clauses, but it monitors developments in courts, legislatures and regulatory agencies concerning the enforceability of the clauses. If courts rule definitively that such clauses are unenforceable, or if laws or regulations proscribe their use, JAMS will comply with the rulings or laws in the applicable cases or jurisdictions. Absent such proscriptions, JAMS accepts arbitration assignments based on condition-of-employment clauses (provided the Minimum Standards are met) but does not encourage the use of such clauses.

 ## B. Minimum Standards of Procedural Fairness

If an arbitration is based on a clause or agreement that is required as a condition of employment, JAMS will accept the assignment only if the proceeding complies with the Minimum Standards of Procedural Fairness for Employment Arbitration.

### Standard No. 1: All Remedies Available

All remedies that would be available under the applicable law in a court proceeding, including attorneys' fees and exemplary damages, as well as statutes of limitations, must remain available in the arbitration. Post-arbitration remedies, if any, must remain available to an employee.

*Comment:* This standard does not make any change to the remedies available. Its purpose is to ensure that the remedies available in arbitrations and court proceedings are the same. JAMS does not object if an employer chooses to limit its own post-arbitration remedies.

### Standard No. 2: Arbitrator Neutrality

The arbitrator(s) must be neutral, and an employee must have the right to participate in the selection of the arbitrator(s).

### Standard No. 3: Representation by Counsel

The agreement or clause must provide that an employee has the right to be represented by counsel. Nothing in the clause or procedures may discourage the use of counsel.

### Standard No. 4: Access to Information/Discovery

The procedures must provide for an exchange of core information prior to the arbitration.

*Comment:* Generally, this discovery should include at least (a) exchange of relevant documents, (b) identification of witnesses and (c) one deposition for each side, i.e., of the employee and of a supervisor or other decision-maker of the employer. Other discovery should be available at the arbitrator's discretion.

### Standard No. 5: Presentation of Evidence

At the arbitration hearing, both the employee and the employer must have the right to (a) present proof, through testimony and documentary evidence, and (b) cross-examine witnesses.

### Standard No. 6: Costs and Location Must Not Preclude Access to Arbitration

An employee's access to arbitration must not be precluded by the employee's inability to pay any costs or by the location of the arbitration. The only fee that an employee may be required to pay is JAMS' initial Case Management Fee. All other costs must be borne by the company, including any additional JAMS Case Management Fee and all professional fees for the arbitrator's services. In California, the arbitration provision may not require an employee who does not prevail to pay the fees and costs incurred by the opposing party.

*Comment:* JAMS does not preclude an employee from contributing to administrative and arbitrator fees and expenses.

### Standard No. 7: Mutuality

JAMS will not administer arbitrations pursuant to clauses that lack mutuality. Both the employer and the employee must have the same obligation (either to arbitrate or go to court) with respect to the same kinds of claims.

### Standard No. 8: Written Awards

An arbitration award will consist of a written statement signed by the Arbitrator regarding the disposition of each claim and the relief, if any, awarded as to each claim. The Arbitrator will also provide a concise written statement of the reasons for the Award, stating the essential findings and conclusions on which the award is based.

• • •

If JAMS becomes aware that an arbitration clause or procedure does not comply with the Minimum Standards, it will notify the employer of the Minimum Standards and inform the employer that the arbitration demand will not be accepted unless there is full compliance with those standards. In assessing whether the standards are met and whether to accept the arbitration assignment, JAMS, as the ADR provider, will limit its inquiry to a facial review of the clause or procedure. If a factual inquiry is required, for example, to determine compliance with Minimum Standards, it must be conducted by an arbitrator or court.

##  C. Questions about Enforcement and Arbitrability

If a party contests the enforceability of a pre-dispute arbitration agreement that was required as a condition of employment, and if compliance with the Minimum Standards is in question, JAMS will, if given notice of the dispute, defer administering the arbitration for a reasonable period of time to allow the contesting party to seek a judicial ruling on the issue. JAMS will comply with that judicial determination. If there is no judicial determination within a reasonable period of time, JAMS will resolve questions of arbitrability under the applicable JAMS Arbitration Rules and Procedures for Employment Disputes.

## D. Other

Parties to an employment arbitration may choose to follow the Arbitration Rules and Procedures for Employment Disputes that were developed by JAMS. These Rules and Procedures exceed the Minimum Standards by providing further procedural protections, including additional discovery and an optional appeal process, to all parties in an employment arbitration.

JAMS is committed to ensuring that all staff who work on employment-related dispute resolution issues are aware of these principles and policies. Internal controls are used to ensure knowledge and compliance by the staff, and to ensure that the company's marketing activities in the employment area do not give rise to any actual or perceived conflict of interest on the part of JAMS or its neutrals.

***Note: These Minimum Standards do not apply if the agreement to arbitrate was individually negotiated by the employee and employer, or if the employee was represented or advised by counsel during the negotiations.***

*(c) Copyright 2009 JAMS. All rights reserved.*

jamsadr.com



# EXHIBIT B

## Rule 6. Preliminary and Administrative Matters

(c) If, at any time, any Party has failed to pay fees or expenses in full, JAMS may order the suspension or termination of the proceedings. JAMS may so inform the Parties in order that one of them may advance the required payment. If one Party advances the payment owed by a non-paying Party, the Arbitration shall proceed, and the Arbitrator may allocate the non-paying Party's share of such costs, in accordance with Rules 24(f) and 31(c). An administrative suspension shall toll any other time limits contained in these Rules or the Parties' Agreement.

[Comprehensive Arbitration Rules and Procedures | JAMS Mediation, Arbitration, ADR Services](#)