**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

Shelley McReynolds,

Plaintiff,

v.

Nexa Mortgage, LLC,

Defendant.

No. CV-25-03326-PHX-GMS

**ORDER**

Pending before the Court is Plaintiff's Motion to Lift Stay. (Doc. 10). For the reasons that follow, Plaintiff's Motion is granted.

**BACKGROUND**

This case involves a dispute over wages between an employee, Plaintiff Shelley McReynolds, and an employer, Defendant NEXA Mortgage, LLC. (Doc. 1). The parties stipulated to stay proceedings in this Court to pursue dispute resolution and arbitration based upon an arbitration clause in their employment contract. (Doc. 8). The stay was granted on October 14, 2025. (Doc. 9). Plaintiff now seeks to lift the stay based upon Defendant's arbitration default. (Doc. 10). The arbitration clause designated JAMS as the arbitration provider. (*Id.* at 2).

On October 2, 2025, Plaintiff submitted a Demand for Arbitration to JAMS. (Doc. 12 at 2). Defendant accepted service on October 31, 2025, and submitted a Response and Statement of Affirmative Defenses on November 14, 2025. (*Id.*). On December 8, 2025, JAMS informed the parties that JAMS would apply its Minimum Standards during the

arbitration and discussed how to contest the standards. (Doc. 15 at 2–3). In employment arbitration, JAMS limits an employee's maximum fee payment to $400 and requires that all other fees be paid by the employer. (Doc. 12 at 3–4). However, the arbitration clause in the parties' employment contract states that "[n]otwithstanding any JAMS rule to the contrary, the parties will share equally in the cost of such Arbitration." (*Id.* at 2–3).

On December 18, 2025, JAMS notified both parties that it received a Demand for Arbitration and that, "[u]pon receipt of the remaining Filing Fee from [Defendant], JAMS will formally commence this matter and proceed with the arbitrator selection process." (Doc. 10-1 at 2). Further, an invoice was attached to this notice. (*Id.* at 3). On January 5, 2026, JAMS sent another notice to all parties, informing them that the matter would be closed if the filing fee was not received within 30 days. (Doc. 10-2 at 2). During this time, Defendant did not challenge the filing fees in any way. (Doc. 15 at 3). On February 6, 2026, JAMS sent a final notice to all parties confirming that the matter was closed. (Doc. 10-3 at 2). Defendant then reached out to Plaintiff to try mutually reopening the case with JAMS, but Plaintiff did not respond. (Doc. 12 at 4). Plaintiff then filed the Motion to Lift Stay. (Doc. 10). Plaintiff argues that Defendant defaulted in the arbitration proceedings and waived its right to arbitration based on its conduct in other litigation. (*Id.*).

## LEGAL STANDARD

Section 3 of the Federal Arbitration Act states that when parties have an arbitration agreement, courts, "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration." 9 U.S.C. § 3. Default in arbitration is a question of fact. *Sink v. Aden Enters., Inc.*, 352 F.3d 1197, 1199 (9th Cir. 2003). Courts are not required to return the parties to arbitration if a party defaults in arbitration, even if the defaulting party asks for another chance. *Id.* at 1200–02. "If a party defaults after an initial stay and reference to arbitration, that permits a district court to vacate the § 3 stay." *Id.* at 1201 (citations omitted). A party can default in the arbitration proceedings by failing to pay fees in arbitration. *See id.* But, if the parties delegated

disputes regarding breach and default of arbitration to the arbitrator, and the arbitrator has not yet found a party in default, then *Sink* is inapplicable and the arbitrator would need to determine default. *Dekker v. Vivint Solar, Inc.*, No. 20-16584, 2021 WL 4958856, at *1 (9th Cir. Oct. 26, 2021).

In *Sink*, the party seeking arbitration received multiple notices that arbitration fees were due but failed to pay these costs, so the arbitrator declared the party seeking arbitration in default for failure to pay fees by the deadline. *Id.* at 1199. The Ninth Circuit defined default as, "[t]he omission or failure to perform a legal or contractual duty; esp., the failure to pay a debt when due." *Id.* at 1199 n.2 (quoting BLACK'S LAW DICTIONARY 428 (7th ed. 1999)). The party seeking arbitration did not present any evidence that they made efforts to arrange payment. *Id.* at 1199. Thus, the party seeking arbitration was in default for failing to pay arbitration fees, and the District Court properly did not return the case to arbitration. *Id.* at 1202.

**DISCUSSION**

By failing to pay any arbitration fees or contest the allocation of fees by the deadline set by the arbitrator, the Defendant caused the closure of the arbitration. (Doc. 10-3 at 2). No party contests this. Defendant has not presented any evidence to show that the parties explicitly agreed to delegate decisions of breach and default to an arbitrator, meaning *Sink* applies and the Court can determine default. *See Dekker*, 2021 WL 4958856, at *1. There is no evidence that Defendant took any action in the arbitration to pay the fees, challenge the allocation, extend the deadline, or inform JAMS of the discrepancy before the closing of the arbitration. Here, as in *Sink*, Defendant has failed to pay arbitration fees, and this caused the arbitrator to close the arbitration, resulting in Defendant's "default in proceeding with such arbitration." 9 U.S.C. § 3.

Defendant does argue that JAMS applied the incorrect fee allocation, and, therefore, Defendant did not default because Defendant was not obligated to pay more than half of the fees. (Doc. 12 at 8–9). However, this argument misses the mark. According to their arbitration agreement, Defendant was responsible for half of the fees for the arbitration,

but Defendant has provided no evidence demonstrating that Defendant paid *any* fees to JAMS. (*See* Doc. 12). Thus, even if Defendant's argument is correct and JAMS improperly applied the wrong fee allocation, Defendant still did not perform its contractual duty by paying half of the fees. No matter how Defendant tries to dismiss its failure to reply to JAMS, Defendant was required to pay some fee in the arbitration and did not do so, just as the party seeking arbitration in *Sink*.

Defendant sought a stay in this proceeding to pursue arbitration but ignored multiple notices from the arbitrator, chose not to inform JAMS of its disagreement with the fee allocation, or pay the required fee. These failures caused Defendant's default in the arbitration proceedings.[1]

## CONCLUSION

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Lift Stay (Doc. 10) is **GRANTED.**

**IT IS FURTHER ORDERED** directing the Clerk of Court to lift the Stay entered on October 14, 2025. (Doc. 9).

**IT IS FURTHER ORDERED** Defendant's responsive pleading to Plaintiff's Complaint is due within fourteen (14) days of the date this Order is docketed.

Dated this 5th day of November, 2026.

G. Murray Snow
Senior United States District Judge

---

[1] Plaintiff also argues that Defendant waived their right to arbitration through litigation conduct, (Doc. 10 at 5–8); however, because Defendant has defaulted in the arbitration, the Court need not reach the issue of waiver.